**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------ x

In re:                                      :           **FOR PUBLICATION**
                                            :
EIGHT-115 ASSOCIATES, LLC,                  :           Chapter 7
                                            :
                              Debtor.       :           Case No. 20-11812 (MG)
                                            :
------------------------------------------------------------------------ x
                                            :
YANN GERON, as Chapter 7 Trustee of the     :
Debtor, Eight-115 Associates, LLC,          :
                                            :
                              Plaintiff,    :
                                            :           Adv. Pro. No. 22-01126 (MG)
                                            :
            v.                              :
                                            :
                                            :
DANIEL REIFER, RMC EQUITIES, LLC and        :
DRR IRREVOCABLE TRUST                       :
                                            :
                              Defendants.   :
                                            :
------------------------------------------------------------------------ x

### MEMORANDUM OPINION AND ORDER GRANTING IN PART
### AND DENYING IN PART MOTION TO DISMISS

*A P P E A R A N C E S :*

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP
*Attorneys for Yann Geron, Chapter 7 Trustee of Eight-115 Associates, LLC*
200 West 41st Street, 17th Floor
New York, New York 10036
By:     Kathleen M. Aiello, Esq.

MCGRAIL & BENSINGER LLP
*Attorneys for the Defendants*
888-C 8th Avenue #107
New York, New York 10019
By:     Ilana Volkov, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion of the defendants to abstain from or, alternatively, to dismiss the complaint in this adversary proceeding. ("Motion," ECF Doc. # 5.) The adversary proceeding was filed by the chapter 7 trustee ("Plaintiff" or "Trustee") of Eight-115 Associates, LLC—the debtor in the main case ("Debtor" or "Eight-115")—against Daniel Reifer, DRR Irrevocable Trust ("DRR Trust"), and RMC Equities, LLC ("RMC Equities," and collectively with Reifer and DRR Trust, the "Defendants"). (*See* "Complaint," ECF Doc. # 1.)

The Complaint alleged nine causes of action against the Defendants. (*See generally* Complaint.) The Trustee filed a timely opposition to the Motion ("Opposition," ECF Doc. # 19), and the Defendants filed a Reply ("Defendants' Reply," ECF Doc. # 20). In the Opposition, the Trustee withdrew five of its original nine causes of action, leaving only claims of: (1) unjust enrichment, (2) constructive fraudulent conveyance, (3) intentional fraudulent conveyance, and (4) disallowance of claims. (Opposition at 2–3.)

The Court held a hearing on the Motion on March 2, 2023. At the hearing, the Court denied the Defendants' request that the Court abstain from hearing this adversary proceeding. The Court writes here to explain the reasoning for this decision and to rule on the motion to dismiss, which the Court reserved decision on at the hearing. After considering the arguments, the Court **DENIES** the Motion in part and **GRANTS** the Motion in part. This Memorandum Opinion explains the Court's reasoning for its ruling.

# I.    BACKGROUND

## A.  Prior Business Relationships and Litigation

### 1.   The Debtor's Corporate Structure and Relationship to the Defendants

The Debtor is a limited liability company organized under Delaware law that owned and operated six buildings in New York City (the "Harlem Properties") before the chapter 7 petition was filed on August 6, 2020 (the "Petition Date").  (Complaint ¶ 10.)

The Debtor's sole member and manager is Lincoln 95 Associates, L.P. ("Lincoln")—a New York limited partnership—whose sole general partner is Stanley Reifer.  (Volkov Decl. at 2, ECF Doc. # 4-1.)  Lincoln has three limited partners: Daniel Reifer, Jeremy Reifer, and DRR Trust.  (*Id*. at 2–3.)  Stanley Reifer is Daniel Reifer's father.  (Complaint ¶ 15.)  DRR Trust is a New York trust whose co-trustee and sole beneficiary is Daniel Reifer.  (*Id*. at 16.)  RMC Equities is a New York limited liability company whose sole member and manager is Daniel Reifer.  (Volkov Decl. at 3.)

### 2.   The RMC Arrangement & Defaulted Loans

Between April 2013 and October 2017, the Complaint alleges that RMC Equities performed various property management services for the Debtor at the Harlem Properties.  (Complaint ¶ 41; Volkov Decl. at 3.)  For these services, the Debtor paid RMC Equities monthly fees that included additional payments for insurance premium reimbursements.  (Complaint ¶ 45.)  These fees were paid directly to Daniel Reifer.  (*Id*.)

The Trustee alleges that around November 25, 2014, the Debtor obtained a $5,775,000 loan from Signature Bank (the "First Loan"), secured by the Harlem Properties with repayment personally guaranteed by Daniel Reifer.  (Volkov Decl. at 4.)  About two years later, the Debtor obtained another loan from Signature Bank (the "Second Loan," and collectively with the First

Loan, the "Loans"), with a principal amount of $1,150,000, secured by a second mortgage on the

Harlem Properties and also personally guaranteed by Daniel Reifer. (*Id.*) Both loans matured on

December 10, 2019. (Complaint ¶ 57.) In December 2019, Signature Bank assigned both loans

to Harlem Multifamily LLC ("HM"). (*Id.* ¶ 59.)

The Complaint alleges that both Loans went into default before the Petition Date for three

reasons: (1) the Debtor failed to pay either loan balance in full on or before the loans' December

10, 2019 maturity date; (2) the Debtor failed to remove certain violations against the Harlem

Properties that were required to be cured on or before May 4, 2017, as stipulated by the Second

Loan agreement; and (3) Daniel Reifer caused the Debtor to fraudulently transfer substantial

amounts of the loan proceeds to himself and other entities. (Complaint ¶¶ 60–62.)

### 3. The Cash Transfers

The Complaint alleges that between December 15, 2014 and August 15, 2017 ("Transfer

Period"), while Daniel Reifer had signatory control over the Debtor's bank accounts, cash

transfers totaling approximately $1,694,967.99 were made from the Debtor to Daniel Reifer, the

DRR Trust, and RMC Equities (the "Transfers"). (*Id.* ¶¶ 62, 64.)

Critical to this case, Daniel Reifer and the DRR Trust received cash transfers classified in

the Debtor's books and records as partnership "distributions" (the "Distributions"). (*Id.* ¶ 69.)

These transfers were not made to Lincoln first and, at the time of each Distribution, the Debtor

purportedly did not have any profits or capital to distribute to Lincoln or Lincoln's partners. (*Id.*

¶¶ 69–72.) In addition, after each time Daniel Reifer and DRR Trust received partnership

Distributions, the balances shown in their K-1 Schedules for the Lincoln Partnership became

more negative. (*Id.* ¶¶ 74, 85, 107.) None of these transfers were classified as "income"

distributions in the Debtor's books and records. (*Id.* ¶¶ 73, 84, 106.)

4

4. <u>Prior Litigation</u>

On July 19, 2017, Daniel Reifer commenced an action (the "D.R. Action") against

Stanley Reifer in New York State Supreme Court, County of New York ("State Court") alleging

that Stanley Reifer, among other things, misappropriated funds. (Volkov Decl. at 6.) On

November 4, 2019, Stanley Reifer commenced an action (the "S.R. Countersuit") against Daniel

Reifer in State Court alleging that Daniel Reifer misappropriated funds from the Debtor. (*Id.* at

7.) On January 22, 2020, HM commenced an action in State Court ("HM Foreclosure Action")

against the Debtor, Daniel Reifer, and others seeking to (1) foreclose upon the mortgages

securing the First and Second Loans and (2) recover from Daniel Reifer any deficiency under his

loan guaranties. (*Id*.)

After the Debtor filed for bankruptcy, the HM Foreclosure Action was removed to the

U.S. District Court for the Southern District of New York, where it was automatically reassigned

to this Court. (*Id*. at 8.) This Court subsequently abstained from hearing HM's claim against

Daniel Reifer on account of the guaranties but denied a motion for abstention as to the rest of the

adversary proceeding. (*Id*.) HM subsequently filed an amended complaint seeking payment of

its alleged deficiency claim against Daniel Reifer. (*Id*.) The HM Foreclosure Action is ongoing,

and HM's allegations against Daniel Reifer are substantially similar to the allegations made by

the Trustee against the Defendants in this adversary proceeding. (*Id*.) As a result of Stanley

Reifer's bankruptcy filing, the D.R. Action was stayed pursuant to the automatic stay. (*Id*.) The

S.R. Countersuit has neither been stayed nor prosecuted. (*Id*.)

5. <u>The Instant Adversary Proceeding & Motion to Dismiss</u>

On August 5, 2022, the Trustee filed this adversary proceeding against the Defendants.

The Complaint generally alleges gross mismanagement and wrongful conduct by the Defendants

over the Harlem Properties and the damages sustained by the Debtor's estate as a result of that

conduct.  The Complaint also seeks to recover funds that Defendants allegedly siphoned from

certain loan proceeds received by the Debtor while under the control of one or more of the

Defendants.

The Defendants' Motion requests that the Court abstain, or alternatively, dismiss the

Complaint for failing to state a claim.  (Motion at 4.)  In its timely Opposition, the Trustee

withdrew five of its original nine claims, only leaving claims for unjust enrichment, constructive

fraudulent conveyance, intentional fraudulent conveyance, and disallowance of claims.

(Opposition at 2–3.)

## II.   LEGAL STANDARD

### A.  Permissive Abstention

28 U.S.C. § 1334(c) governs requests for permissive abstention. That statute provides:

> (c)(1) Except with respect to a case under chapter 15 of title 11, nothing in
> this section prevents a district court in the interest of justice, or in the interest
> of comity with State courts or respect for State law, from abstaining from
> hearing a particular proceeding arising under title 11 or arising in or related
> to a case under title 11.

28 U.S.C. § 1334(c)(1).

Permissive abstention is left to the bankruptcy court's discretion.  *In re Petrie Retail, Inc*.,

304 F.3d 223, 232 (2d Cir. 2002); *In re Cody, Inc*., 281 B.R. 182, 190 (S.D.N.Y. 2002), *aff'd in*

*part, appeal dismissed in part*, 338 F.3d 89 (2d Cir. 2003).  The movant bears the burden of

establishing that permissive abstention is warranted.  *In re Aramid Ent. Fund, LLC*, 628 B.R.

584, 594 (Bankr. S.D.N.Y. 2021).

Courts have identified twelve factors that may be considered in deciding a motion for

abstention:

6

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 4747785, at *14 (Bankr. S.D.N.Y. 3 Aug. 4, 2015) (citing *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 332 (S.D.N.Y. 2003)).

But courts do not need to consider all twelve factors in every case. *In re Tronox*, 603 B.R. 712, 726 (Bankr. S.D.N.Y. 2019) (citing *In re Cody, Inc.*, 281 B.R. 182, 190 (S.D.N.Y. 2002)). These factors ask a court to balance the federal interest in efficient bankruptcy administration against the interest of comity between the state and federal courts. *See id.* The analysis is not simply a "mechanical" or "mathematical" exercise and the Court "need not plod through a discussion of each factor in the laundry lists developed in prior decisions." *Id.* (citing *In re Janssen*, 396 B.R. 624, 636 (Bankr. E.D. Pa. 2008)). Rather, the process thoughtfully assesses what makes good sense in the totality of the circumstances. *Id.*

Federal courts should proceed carefully before permissively abstaining because they have a "virtually unflagging obligation . . . to exercise the jurisdiction given them and may abstain only for a few extraordinary and narrow exception[s]." *Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 513 (S.D.N.Y. 2015) (citations omitted); *see also CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602, 607 (S.D.N.Y. 2008) ("Courts must be

sparing in their exercise of permissive abstention and may abstain only for a few extraordinary

and narrow exceptions."). Given that "federal courts have an obligation to exercise the

jurisdiction properly given to them, there is a presumption in favor of the exercise of federal

jurisdiction and against abstention." *Aramid Ent. Fund*, 628 B.R. at 594 (internal quotations

omitted).

### B.  Motion to Dismiss

A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6) of the

Federal Rules of Civil Procedure, made applicable to an adversary proceeding by Rule 7012 of

the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). *See* Fed. R. Bankr. P. 7012;

Fed. R. Civ. P. 12(b)(6). The "court must accept a complaint's allegations as true," and "[w]hen

there are well-pleaded factual allegations, a court should assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556

U.S. 662, 663-64 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Further,

when reviewing the sufficiency of a complaint, "[t]he issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

*Scheuer*, 416 U.S. at 236. A court's role in evaluating a motion to dismiss is to determine the

legal feasibility of the complaint, not to weigh the evidence that may be offered to support it.

*Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

Although the allegations must be taken as true, the complaint must contain more than just

a formulaic recitation of the elements of a cause of action, and the court should "identify[]

allegations that, because they are mere conclusions, are not entitled to the assumption of truth."

*Iqbal*, 556 U.S. at 664; *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir.

2008) (stating that "bald assertions and conclusions of law will not suffice"). To survive a

motion to dismiss for failure to state a claim, a plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "To show facial plausibility, the Claimant must plead 'factual content that allows the court to draw the reasonable inference that the [defendant] is liable for the misconduct alleged.'" *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009). A complaint that merely contains "'naked assertion[s]' devoid of 'further factual enhancement'" cannot survive a motion to dismiss. *In re Trinsum Grp., Inc.*, 460 B.R. 379, 387 (Bankr. S.D.N.Y. 2011). The legal standards for the substantive grounds offered in support of dismissal are discussed in Section III.B below.

## III.   DISCUSSION

### A. Permissive Abstention

As noted above, the Court denied the Motion to the extent that it sought abstention at the conclusion of the March 2, 2023 hearing. The Court will briefly explain the reasons for its ruling.

First, the parties and issues in the pending state court action differ from the parties and issues in this adversary proceeding. Thus, the state court action cannot fully resolve all of the issues in this case. Most importantly, fully administering this chapter 7 case requires that the Trustee's claims against the Defendants be resolved promptly by settlement or judgment. This Court is in the best position to do that. The twelve factors, to the extent applicable here, favored denial of the abstention motion. The parties have since agreed on terms of a case management order, which the Court has entered, that will have this case move forward expeditiously.

The parties generally differ in opinion on the degree to which the claims asserted in the Complaint are related to the Debtor's bankruptcy proceeding (factor five); duplicative of the

matters already being adjudicated in State Court (factors two and four); and comprised of settled, state law claims that are more-appropriately resolved outside of the bankruptcy forum (factors one and three). (Motion at 3; Opposition at 7–9.)  The Defendants also state that at least one defendant has a right to a jury trial for the causes of action asserted in the Complaint under the Seventh Amendment of the United States Constitution (factor eleven). (Motion at 4.)

Factors one, two, three, and four weigh against abstention.  Factor five is neutral and factor eleven favors abstention.  As the balance of factors weighs in favor of the Court hearing this matter, the Court denies the Defendants' request for abstention.

## B. Dismissal

### 1. The Claim of Unjust Enrichment

The Complaint alleges that each of the Transfers to the Defendants should have been characterized as a transfer of interest of the Debtor's property and constituted an enrichment at the expense of the Debtor, its estate, and its creditors. (Complaint ¶¶ 208–212.)  The parties' primarily dispute which statute of limitations is applicable to the Transfers in question—a three-year, not six-year, time period would favor dismissal of the Trustee's unjust enrichment claim as being time-barred.

Defendants argue a three-year statute of limitations begins to run upon the occurrence of the wrongful act giving rise to the duty of restitution.  *See Ingrami v. Rovner*, 847 N.Y.S.2d 132, 134 (2nd Dept. 2007); *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 42 (Del. Ch. 2012). Defendants contend that every Transfer except for one made to Daniel Reifer on August 15, 2017 ("August 15 Transfer") are barred by the three-year state of limitations. (Motion at 10.) As for the August 15 Transfer, the Defendants argue that this cash flow was not made at the

Debtor's expense, thus precluding a necessary element of an unjust enrichment cause of action. (*Id.*)[1]

The Trustee argues that a six-year state of limitations applies. (Opposition at 24.)[2]  The Defendants counter by arguing that the applicable limitation period varies by the type of relief sought,[3] and that because the Trustee seeks monetary rather than equitable relief, a three-year statute of limitations is applicable. (Defendants' Reply at 10.)

At this point in the proceeding, the Court will not conclusively decide which statute of limitations period should govern the Transfers; determining the applicability of a three- or six-year limitations period will depend on further factual development.  The Defendants' argument does not challenge the underlying sufficiency of the pleadings, and the Complaint provides clear allegations that the Defendants gained a monetary benefit through each Transfer that came at the expense of the Debtor.  Furthermore, the Trustee plausibly alleges that the Debtor was taking on new debt at the time that it was making sizeable Transfers to the Defendants, which left the Debtor unable to cure violations on the Harlem Properties and led to defaults on its loan obligations. (Complaint ¶ 213.)  Because the Complaint presents a plausible claim of unjust enrichment against the Defendants, the Court denies the Motion to dismiss the Trustee's claim.

## 2.   The Fraudulent Conveyance Claims

The Complaint also alleges that each of the Transfers to the Defendants constituted a constructive and intentional fraudulent conveyance of an interest of the Debtor within the

---

[1]    A claim for unjust enrichment under New York law must demonstrate "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 509 (2d Cir. 2009) (quoting *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 129 (2d Cir. 2002)).

[2]    *See, e.g., Deutsche Bank, AG v. Vik*, 142 A.D.3d 829 40 N.Y.S.3d 23 (1st Dept. 2016); *Williams-Guillaume v. Bank of Am., N.A.*, 130 A.D.3d 1016, 1017, 14 N.Y.S. 3d 466 (2d Dept. 2015); *Elliott v. Qwest Commc'ns Corp.*, 25 A.D.3d 897 808 N.Y.S.2d 443 (3d Dept. 2006).

[3]    *Bascuñan v. Elsaca*, 2021 WL 3540315, at *7 (S.D.N.Y. Aug. 11, 2021).

meaning of section 101(54) of the Bankruptcy Code. (Complaint ¶ 286.) The parties dispute

whether (1) the Trustee's claims are time-barred based on the applicable time period governing

the Transfers' statute of limitations; (2) the Trustee has standing to pursue its avoidance claims;

(3) the Complaint meets the Rule 8(a) pleading standard for a claim of constructive fraudulent

conveyance; and (4) the Complaint meets the elevated Rule 9(b) pleading standard for a claim of

intentional fraudulent conveyance.

### a. Are the Fraudulent Conveyance Claims Time-Barred?

Under New York law, the general statute of limitations for fraudulent conveyances is six

years[4] (*Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993) (citations omitted)), but New

York Limited Liability Company Law ("NYLLCL") § 508(c) provides that "[a] member who

receives a wrongful distribution from a limited liability company shall have no liability under

this article or other applicable law for the amount of the distribution after the expiration of three

years from the date of the distribution." Courts routinely apply this three-year time limit to

avoidance actions under 11 U.S.C. § 544 and cases involving NYLLCL Section 508. *See, e.g.,*

*O'Connell v. Shallo* (*In re Die Fliedermaus LLC*), 323 B.R. 101, 108 (Bankr. S.D.N.Y. 2005).

The Defendants contend that the Transfers are subject to a three-year limitations period

because they are considered "distributions" from a limited liability company ("LLC") to its

members. (Motion at 16–17.) In response, the Trustee submits that none of the Defendants are

---

[4]     The 6-year statute of limitations applies in this case. The *current* statute of limitations for fraudulent conveyance claims brought pursuant to sections 273, 273-A, or 274 of the NY DCL is 4 years. *See* NY DCL § 278. This change became effective on April 4, 2020, under the New York Uniform Voidable Transfers Act ("UVTA"). By its terms, the NY UVTA applies only to transfers made, or obligations incurred, on or after the effective date. N.Y. Legis. Assemb. A-5622 § 7, Reg. Sess. 2019-2020 (2019) ("This act shall take effect one hundred twenty days after it shall have become a law, and shall apply to a transfer made or obligation incurred on or after such effective date, but shall not apply to a transfer made or obligation incurred before such effective date, nor shall it apply to a right of action that has accrued before such effective date."). The Transfers contested in this case purportedly occurred between 2014 and 2017 and are not subject to the revised 4-year look back period.

members of the Debtor—the only member of the Debtor was Lincoln, and the Transfers are not characterized as partnership "distributions" in the Debtors books and records. (Opposition at 12.) Therefore, the Trustee contends, the three-year limitation period is inapplicable. (*Id.*) In their reply, the Defendants claim that Lincoln—which was the Debtor's sole member and of which Daniel Reifer and the DRR Trust are limited partners—was a pass-through entity for the Defendants, therefore the three-year limitations period applies. (Defendant's Reply at 9.)

The Defendants offer no legal support for the proposition that limited partners of a pass-through entity that is the sole member of an LLC should be treated as LLC members for the purposes of the Distributions. Furthermore, nothing in the NYLLCL supports this conclusion. Thus, the Court concludes a six-year statute of limitations applies to the Transfers, and the Court finds that the Trustee's claims for fraudulent conveyance are not time-barred.

### b. *Does the Trustee Have Standing to Pursue its Claims?*

The Defendants assert that the Trustee's right to pursue avoidance claims under section 544 of the Bankruptcy Code depends on the existence, as of the Petition Date, of at least one actual unsecured creditor who would have had the right to pursue the relevant avoidance claims under state law. (Motion at 17.) Section 544 provides that the trustee has standing to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable" under section 502 of the Bankruptcy Code. 11 U.S.C. § 544(b)(1).

The Trustee argues that paragraphs 173–178 of the Complaint sufficiently demonstrate the existence of an unpaid creditor on the Petition Date by pointing to the existence of HM. (Opposition at 11.) According to the Trustee, HM possessed and continues to hold an outstanding deficiency claim on the Harlem Properties, so it can properly be considered a

creditor to the Debtor. (*Id*.) However, the Defendants represent that paragraphs 173–178 relate

to the *post-petition* sale of the Harlem Properties and a determination of HM's deficiency claim

via settlement. (Defendants' Reply at 3.) Thus, the Defendants assert, HM cannot serve as the

necessary unsecured creditor at the time of the Transfers or the Petition Date. (*Id*.) The

Defendants' Reply acknowledges that one claim could potentially have existed at the time of the

Transfers and the Petition Date—a $4,767.18 claim by the NYC Office of Administrative Trials

and Hearings (Claim. No. 9, the "NYC Claim")—but argues that the Court should not allow the

Trustee to rely on such a *de minimis* unsecured claim to pursue transfers of approximately $1.6

million. (*Id.* at 4.)

Section 544 clearly marks the Petition Date, not any date post-petition, as the relevant

date here. In any event, the Trustee need not rely on its argument that HM possessed an

unsecured claim because of the NYC Claim. As the Defendants themselves acknowledge, the

NYC Claim may have existed at the Petition Date. Although the Defendants attempt to dissuade

the Court from relying on a *de minimis* claim to pursue the much larger Transfers, nothing in

section 544 implies that the amount of an unsecured claim is relevant for the purposes of the

Trustee's standing. Thus, the Court finds the Trustee has standing to pursue the fraudulent

conveyance claims under section 544(b)(1) of the Bankruptcy Code.

> c. *Constructive Fraudulent Conveyance: Did the Complaint Meet the Pleading Standard?*

Pursuant to Section 544 of the Bankruptcy Code, the Trustee can assert fraudulent

conveyance claims rooted in New York Debtor and Creditor Law(s) ("NY DCL") §§ 272–275.

11 U.S.C. § 544(b)(1) ("the trustee may avoid any transfer of an interest of the debtor in property

or any obligation incurred by the debtor that is voidable under applicable law by a creditor

holding an unsecured claim. . . .").  The Defendants argue that the Complaint fails the requisite

degree of specificity for these state law claims.  (Motion at 16–22.)

The NY DCL states that a conveyance by a debtor is deemed constructively fraudulent if

it is made without "fair consideration" (now referred in the statute as "reasonably equivalent

value") and one of the following conditions is met:

> (i) the transferor is insolvent or will be rendered insolvent by the transfer in
> question, DCL § 273; (ii) the transferor is engaged in or is about to engage
> in a business transaction for which its remaining property constitutes
> unreasonably small capital, DCL § 274; or (iii) the transferor believes that
> it will incur debt beyond its ability to pay, DCL § 275.

*In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005) (quoting N.Y. Debt. & Cred. §§ 272–

275).

Fair consideration requires both (1) fair equivalency of the consideration and (2) good

faith by both parties.  *See* N.Y. Debt. & Cred. § 272.  However, the plaintiff need only plead

either a lack of fair equivalency or a lack of good faith on the part of the transferee to defeat a

motion to dismiss.  *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 110 (Bankr. S.D.N.Y.

2011) (citing *In re Dreier LLP*, 452 B.R. 391, 443 (Bankr. S.D.N.Y. 2011)).

Accordingly, a claim of constructive fraudulent conveyance is pleaded successfully if the

Complaint alleges sufficient facts to indicate that the Transfers were made without fair

consideration.  Paragraphs 289 and 290 of the Complaint explicitly allege that the Debtor did not

receive fair consideration in exchange for each of the Transfers, and that the Debtor was either

insolvent at the time of the Transfers or became insolvent because of the Transfers.  (Complaint

¶¶ 289–90.)  The Trustee further notes that paragraphs 129, 146, and 151 of the Complaint

bolster the factual sufficiency of his allegations.  (Opposition at 22.)  In response, the Defendants

argue that paragraph 289 is a "mere recitation of the law" and the only instance when the words

"fair consideration" are referenced in the Complaint.  (Defendant's Reply at 8.)

15

Taken together, paragraphs 129, 146, 151, 289, and 290 of the Complaint allege sufficient facts that reasonably suggest the Transfers were without fair equivalency of consideration.  In addition, the Trustee makes a convincing argument in his Opposition: the Defendants cannot characterize the Transfers to Daniel Reifer and DRR Trust as profit "distributions" to LLC members while simultaneously claiming fair consideration for the Transfers—profit distributions by an LLC to its members are, by their nature, without consideration.  *In re Direct Access Partners, LLC*, 602 B.R. 495, 545 (Bankr. S.D.N.Y. 2019). In sum, the Court finds the Trustee has met his burden to plead a claim of constructive fraudulent conveyance.

> d. *Intentional Fraudulent Conveyance: Did the Complaint meet the Pleading Standard?*

The Defendants also dispute whether the Complaint successfully meets the heightened pleading standard for a claim of intentional fraudulent conveyance under Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9") made applicable to this adversary proceeding by Federal Bankruptcy Rule 7009.  (Motion at 22.)  In response, the Trustee claims that the Complaint meets the standard because courts apply a lenient approach to Rule 9 in circumstances when a bankruptcy trustee relies upon second-hand information to plead fraudulent conveyance. (Opposition at 16.)

It is well-settled that the Rule 9(b) pleading requirements apply to claims of intentional fraudulent transfer.  *In re Sharp Int'l Corp.*, 403 F.3d at 56; *In re White Metal Rolling & Stamping Corp.*, 222 B.R. 417, 428 (Bankr. S.D.N.Y. 1998).  Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity."  FED. R. CIV. P. 9(b).  "Conclusory allegations that defendant's conduct was fraudulent" or "merely quoting or paraphrasing the statutory language" is not enough to pass

muster under heightened standard. *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings, Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000); *In re White Metal Rolling.*, 222 B.R. at 429.

However, this Court has previously noted that "[w]hen a trustee in bankruptcy pleads a claim of fraud, cases have held that the Rule 9(b) requirement of particularity is relaxed." *Bankr. Estate of Norske Skogindustrier ASA v. Cyrus Capital Partners, L.P.* (*In re Bankr. Estate of Norske Skogindustrier ASA*), 633 B.R. 640, 655 (Bankr. S.D.N.Y. 2021) (citing 10 COLLIER ON BANKRUPTCY ¶ 7009.03 (16th ed. 2021) (citing cases)).   "[T]he less stringent standard for pleading fraud with particularity in a bankruptcy proceeding involving a trustee is predicated upon the fact that it is often the trustee, a third party, who is pleading fraud on second-hand information." *Id.* (citations omitted).

Nevertheless, the general prohibition against conclusory allegations is not entirely done away with.  This Court has noted that "general allegations are insufficient when pleading fraud, and the party asserting the claim must plead facts, 'including time and place and content of the misrepresentations, . . . [and] facts with respect to the consequences of the fraud.'" *Id.* (citing 10 COLLIER ON BANKRUPTCY ¶ 7009.03).  Furthermore, where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant—lumping all the defendants together fails to satisfy the particularity requirement. *In re Crude Oil Commodity Litig.*, No. 06 CIV. 6677 (NRB), 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007); *see also DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent [acts] to 'defendants.'"). Allegations of fraudulent intent under NY DCL § 276[5] must also plead the requisite mental

---

[5]       The Trustee brought the intentional fraudulent conveyance claim under NY DCL §§ 276 (defining a conveyance made with the intent to defraud creditors), 276-a (providing for attorney's fees in intentional fraudulent

intent element with particularity. *In re White Metal Rolling.*, 222 B.R. at 428 (citing *Atlanta Shipping Corp. v. Chemical Bank,* 818 F.2d 240, 251 (2d Cir.1987)).

Here, the only factual allegation the Trustee makes is that Daniel Reifer caused the Transfers, which were not authorized under the Lincoln partnership agreement, to the benefit of the Defendants while the Debtor was undercapitalized. (Complaint ¶¶ 297–302.) Even if this assertion is taken as true, the Complaint does not plausibly allege the Defendants' intent to hinder, delay, or defraud its creditors. The only paragraph that mentions the Defendants' fraudulent intent—paragraph 306—is not made with particularity. The paragraph "lumps" together DRR Trust and RMC Equities and accuses both Defendants under an umbrella allegation: "the *Defendants* exercised the requisite fraudulent intent in facilitating Defendant Reifer's efforts, by and through the Debtor, so they would receive the Transfers to the detriment of the Debtor and its creditors." (Complaint ¶ 306 (emphasis added).)

Paragraph 306 fails the heightened pleading standards of NY DCL § 276 and Rule 9(b). However, when "a trustee's complaint is dismissed for failure to comply with the requirements of Rule 9(b), it is often dismissed with leave to amend." *In re White Metal Rolling.*, 222 B.R. at 430. Therefore, this Court grants the Defendants' Motion with respect to the Trustee's intentional fraudulent conveyance claim and grants the Trustee leave to amend the Complaint with respect to this cause of action.

### 3. Disallowance of Proofs of Claim

The Complaint alleges that the proofs of claim filed by Daniel Reifer and RMC Equities should be disallowed under section 502(d) of the Bankruptcy Code and because the claims are

---

conveyance actions), 278 (providing the rights of creditors whose claims have matured to avoid fraudulent conveyances), and/or 279 (providing the rights of creditors whose claims have matured to avoid fraudulent conveyances). (Complaint ¶ 307.)

time-barred, duplicative, or were for payments that did not directly benefit the Debtor.

(Complaint ¶¶ 309–14; *see also* Opposition at 25.)  In response, the Defendants argue that

Trustee cannot avail himself under section 502(d) because the Trustee cannot prove the Transfers

are recoverable under section 544 of the Bankruptcy Code.  (Motion at 24.)

Section 502(d) of the Bankruptcy Code states the Court shall:

> disallow any claim of any entity . . . that is a transferee of a transfer
> avoidable under section . . . 544  of this title, unless such entity or
> transferee has paid the amount for which such entity or transferee is liable
> under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. 502(d)(1).

Because the Trustee's intentional fraudulent conveyance claim has been dismissed, the

constructive fraudulent conveyance claim forms the basis for which the Transfers would be

avoidable.  As cited above, this Court has already found that the Complaint properly pleads facts

that allege constructive fraudulent conveyance.  (*See* Complaint ¶¶ 129, 146, 151, 289, 290.)  In

addition, the Court has already found that the Trustee has standing to pursue the fraudulent

conveyance claims under section 544(b)(1) of the Bankruptcy Code.  Therefore, the Trustee has

sufficiently plead that the Transfers are avoidable under section 544.

In addition, the Court finds that the Trustee plausibly alleged that Daniel Reifer and RMC

Equities are liable for the Transfers under section 550 of the Bankruptcy Code, which provides

that the Trustee may recover "for the benefit of the estate, the property transferred, or . . . the

value of such property, from . . . the initial transferee of such transfer or the entity for whose

benefit such transfer was made."  11 U.S.C. § 550(a)(1).  Accordingly, this Court finds that the

Trustee has sufficiently pled facts which satisfy the requirements for disallowance of Daniel

Reifer and RMC Equities' proofs of claim.

19

## IV.    <u>CONCLUSION</u>

For the reasons explained above, the Court **DENIES** the request to abstain from hearing this adversary proceeding and **DENIES** the Motion with respect to the Trustee's unjust enrichment, constructive fraudulent conveyance, and disallowance claims.  The Court **GRANTS** the Motion with respect to the intentional fraudulent conveyance claim and **ORDERS** that the intentional fraudulent claim be **DISMISSED WITH LEAVE TO AMEND.**

**IT IS SO ORDERED.**

Dated: March 29, 2023
       New York, New York

_Martin Glenn_

MARTIN GLENN
Chief United States Bankruptcy Judge